

**U.S. Department of Justice**

*Andrew E. Lelling*
United States Attorney
District of Massachusetts

---

*Main Reception: (617) 748-3100*                    *John Joseph Moakley United States Courthouse*
                                                    *1 Courthouse Way*
                                                    *Suite 9200*
                                                    *Boston, Massachusetts 02210*

February 9, 2018

Charles McGinty, Esq.
Assistant Federal Public Defender
Federal Public Defender Office
51 Sleeper Street, Fifth Floor
Boston, MA 02210

      Re:    <u>United States v. Jesse Gillis</u>
             Criminal No. 16-CR-10320 GAO

Dear Mr. McGinty:

The United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Jesse Gillis ("Defendant"), agree as follows with respect to the above-referenced case:

    1.    <u>Change of Plea</u>

At the earliest practicable date, but in no event later than March 8, 2018, Defendant shall plead guilty to all counts in which he is named in the above-referenced Indictment:  Count One, charging Conspiracy to Distribute and to Possess with Intent to Distribute 50 Grams or More of Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846; and Count Ten, charging Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. § 1956(h). Defendant expressly and unequivocally admits that he committed the crimes charged in Counts One and Ten of the Indictment, did so knowingly and intentionally, and is in fact guilty of those offenses.  Defendant also expressly and unequivocally admits that the offense in Count One involved 50 grams or more of methamphetamine (actual), and that 50 grams or more of methamphetamine (actual) are attributable to him and were foreseeable by him in connection with the offenses of conviction, and that 21 U.S.C. §§841(b)(1)(A)(viii) applies to him.

Defendant agrees to the accuracy of the attached statement of facts.

    2.    <u>Penalties</u>

Defendant faces the following mandatory minimum and maximum penalties with regard

to Count One of the Indictment:  incarceration for not less than 10 years and up to life; supervised release for at least five years and up to life; a fine of up to $10 million; a mandatory special assessment of $100; and forfeiture to the extent charged in the Indictment.  Defendant faces the following maximum penalties with regard to Count Ten of the Indictment:  incarceration for up to 20 years; supervised release for up to five years; a fine of $500,000 or twice the value of the property laundered, whichever is greater; a mandatory special assessment of $100; and forfeiture to the extent charged in the Indictment.

3.  Sentencing Guidelines

The sentence to be imposed upon Defendant is within the discretion of the District Court ("Court"), subject to the statutory mandatory minimum and maximum penalties set forth above and the provisions of the Sentencing Reform Act, and the advisory United States Sentencing Guidelines ("USSG" or "Guidelines").  While the Court may impose a sentence up to and including the statutory maximum term of imprisonment and statutory maximum fine, it must consult and take into account the USSG and the other factors set forth in 18 U.S.C. § 3553(a) in imposing a sentence.

The parties agree that Defendant's total offense level under the USSG (prior to any adjustment for acceptance of responsibility) is calculated as follows:

Count 1 (Conspiracy to Distribute/Possess with Intent to Distribute Methamphetamine)

- Defendant will take the position, which the U.S. Attorney will not contest, that in accordance with USSG § 2D1.1(c)(3), Defendant's base offense level is 34, because he is responsible for at least 500 grams but less than 1.5 kilograms of methamphetamine (actual), which quantity represents the total amount involved in Defendant's relevant criminal conduct that, independent of Defendant's information protected under §1B1.8, is known to the government and provable at sentencing, including amounts Defendant conspired to distribute or to possess with intent to distribute, and amounts distributed or possessed with intent to distribute by others pursuant to jointly undertaken criminal activity that was reasonably foreseeable by Defendant and in furtherance of the jointly undertaken activity;  and

- in accordance with USSG § 3B1.1(b), Defendant's offense level is increased by three levels because Defendant was a manager or supervisor in a criminal activity that involved five or more participants or was otherwise extensive.

Count 10 (Conspiracy to Launder Monetary Instruments)

- Defendant will take the position, which the U.S. Attorney will not contest, that in accordance with USSG §§ 2S1.1(a) and 2D1.1(c)(3), Defendant's base offense level is 34, because Defendant committed the underlying offense from

2

which the laundered funds were derived and the offense level for that offense can be determined (as set forth above);

- in accordance with USSG § 2S1.1(b)(2)(B), Defendant's offense level is increased by 2 because Defendant will be convicted under 18 U.S.C. § 1956; and

- in accordance with USSG § 3B1.1(b), Defendant's offense level is increased by three levels because Defendant was a manager or supervisor in a criminal activity that involved five or more participants or was otherwise extensive.

Per USSG §3D1.3, the drug and money laundering offenses group, and the sentence will be determined by the offense producing the highest offense level: Count Ten, money laundering.

If Defendant contends that there is a basis for departure from, or a sentence outside, the otherwise applicable Guidelines sentencing range based on Defendant's medical, mental, and/or emotional condition, or otherwise intends to rely on any such condition at sentencing, Defendant will, forthwith upon request, execute all releases and other documentation necessary to permit the U.S. Attorney and his experts (including Bureau of Prisons medical personnel) to obtain access to Defendant's medical, psychiatric, and psychotherapeutic records and will also provide to the U.S. Attorney forthwith copies of any such records already in Defendant's possession. In addition, Defendant will authorize Defendant's care providers to discuss Defendant's condition with the U.S. Attorney and his agents (including Bureau of Prisons medical personnel), as well as experts retained by the U.S. Attorney. Defendant also agrees to submit to examinations and interviews with experts retained by and chosen by the U.S. Attorney (including Bureau of Prisons medical personnel).

The U.S. Attorney reserves the right to oppose Defendant's argument(s) for a departure from, or a sentence outside, the USSG under the factors set forth in 18 U.S.C. § 3553(a).

Based on Defendant's prompt acceptance of personal responsibility for the offenses of conviction in this case, and information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by three levels Defendant's adjusted offense level under USSG § 3E1.1.

The U.S. Attorney reserves the right not to recommend a reduction under USSG § 3E1.1 if, at any time between Defendant's execution of this Plea Agreement and sentencing, Defendant:

(a) Fails to admit a complete factual basis for the plea;

(b) Fails to truthfully admit Defendant's conduct in the offenses of conviction;

(c) Falsely denies, or frivolously contests, relevant conduct for which Defendant is accountable under USSG § 1B1.3;

(d)     Fails to provide truthful information about Defendant's financial status;

(e)     Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Defendant is accountable under USSG § 1B1.3;

(f)     Engages in acts that form a basis for finding that Defendant has obstructed or impeded the administration of justice under USSG § 3C1.1;

(g)     Intentionally fails to appear in Court or violates any condition of release;

(h)     Commits a crime;

(i)     Transfers any asset protected under any provision of this Plea Agreement; or

(j)     Attempts to withdraw Defendant's guilty plea.

Defendant understands and acknowledges that Defendant may not withdraw his plea of guilty if, for any of the reasons listed above, the U.S. Attorney does not recommend that Defendant receive a reduction in offense level for acceptance of responsibility. Defendant also understands and acknowledges that, in addition to declining to recommend an acceptance-of-responsibility adjustment, the U.S. Attorney may seek an upward adjustment pursuant to USSG § 3C1.1 if Defendant obstructs justice after the date of this Plea Agreement.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

4.     <u>Sentence Recommendation</u>

The U.S. Attorney agrees to recommend the following sentence before the Court:

(a)     incarceration at the low end of the Guidelines sentencing range as calculated by the parties in Paragraph 3;

(b)     a fine within the Guidelines sentencing range as calculated by the parties, unless the Court finds that Defendant is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay a fine;

(c)     60 months of supervised release;

(d)     a mandatory special assessment of $200, which Defendant must pay to the Clerk of the Court on or before the date of sentencing (unless Defendant establishes to the Court's satisfaction that Defendant is unable to do so); and

(e)     forfeiture as set forth in Paragraph 9.

Defendant agrees to provide the U.S. Attorney expert reports, motions, memoranda of law and documentation of any kind on which Defendant intends to rely at sentencing not later than 21 days before sentencing.  Any basis for sentencing as to which Defendant has not provided the U.S. Attorney all such items at least 21 days before sentencing shall be deemed waived.

5.     <u>Protection of Assets for Payment of Restitution, Forfeiture and Fine</u>

Defendant agrees not to transfer, or authorize the transfer of, any asset that has been restrained by Order of the Court in this case or any asset, whether or not restrained, that Defendant has agreed to forfeit pursuant to this Plea Agreement.

Defendant agrees not to transfer, or authorize the transfer of any other asset in which Defendant has an interest without prior express written consent of the U.S. Attorney, except for:

(a)     Assets subject to superior, secured interests of innocent third parties, in which Defendant has an equity interest of less than $5000; and

(b)     Ordinary living expenses necessary to house, clothe, transport, and feed Defendant and those to whom Defendant owes a legal duty of support, so long as such assets do not exceed $4000 per month.

This prohibition shall be effective as of the date of Defendant's execution of this Plea Agreement and continue until the fine, forfeiture, and restitution ordered by the Court at sentencing are satisfied in full.

If the U.S. Attorney requests, Defendant further agrees to complete truthfully and accurately the enclosed sworn financial statement and to deliver that statement to the U.S. Attorney within 30 days of signing this Plea Agreement.

6.     <u>Waiver of Rights to Appeal and to Bring Future Challenge</u>

(a)     Defendant has conferred with his attorney and understands that he has the right to challenge both his conviction and his sentence (including any orders relating to supervised release, fines, forfeiture, and restitution) on direct appeal.  Defendant also understands that, in some circumstances, Defendant may be able to argue in a future proceeding (collateral or otherwise), such as pursuant to a motion under 28 U.S.C. § 2255, 28 U.S.C. § 2241, or 18 U.S.C. § 3582(c), that Defendant's conviction should be set aside or Defendant's sentence (including any orders relating to supervised release, fines, forfeiture, and restitution) set aside or reduced.

(b)     Defendant waives any right to challenge Defendant's conviction on direct appeal or in a future proceeding (collateral or otherwise).

(c)     Defendant agrees not to file a direct appeal or challenge in a future proceeding (collateral or otherwise) any sentence of imprisonment of 235 months or less or any orders relating to supervised release, fines, forfeiture, and restitution.  This provision is binding even if the Court's Guidelines analysis is different from that set forth in this Plea Agreement.

(d)     This Plea Agreement does not affect the rights of the United States as set forth in 18 U.S.C. § 3742(b).  Defendant understands and acknowledges that the U.S. Attorney has retained all appeal rights.

(e)     Regardless of the previous sub-paragraphs, Defendant reserves the right to claim that: (i) Defendant's lawyer rendered ineffective assistance of counsel under *Strickland v. Washington*; or (ii) the prosecutor in this case engaged in misconduct that entitles Defendant to relief from Defendant's conviction or sentence.

7.     Other Post-Sentence Events

(a)     If, despite the waiver provision of sub-paragraph 6(c), Defendant appeals or challenges in a future proceeding (collateral or otherwise) Defendant's sentence, the U.S. Attorney reserves the right to argue the correctness of the sentence imposed by the Court (in addition to arguing that any appeal or future challenge (collateral or otherwise) is waived as a result of the waiver in sub-paragraph 6(c)).

(b)     If, despite the waiver provision of sub-paragraph 6(c), Defendant seeks re-sentencing, Defendant agrees not to seek to be re-sentenced with the benefit of any change to the Criminal History Category that the Court calculated at the time of Defendant's original sentencing, except to the extent that Defendant has been found actually factually innocent of a prior crime.

(c)     In the event of a re-sentencing following an appeal from or future challenge (collateral or otherwise) to Defendant's sentence, the U.S. Attorney reserves the right to seek a departure from and a sentence outside the USSG if, and to the extent, necessary to reinstate the sentence the U.S. Attorney advocated at Defendant's initial sentencing pursuant to this Plea Agreement.

8.     Court Not Bound by Plea Agreement

The parties' sentencing recommendations and their respective calculations under the USSG are not binding upon the U.S. Probation Office or the Court.  Within the mandatory minimum and

maximum sentence Defendant faces under the applicable law, the sentence to be imposed is within the sole discretion of the Court.  Defendant's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(B).  Defendant may not withdraw his plea of guilty regardless of what sentence is imposed, or because the U.S. Probation Office or the Court declines to follow the parties' USSG calculations or recommendations.  Should the Court decline to follow the U.S. Attorney's USSG calculations or recommendations, the U.S. Attorney reserves the right to defend the Court's calculations and sentence in any direct appeal or future challenge (collateral or otherwise).

9.  Forfeiture

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

a.  approximately $52,970 U.S. Currency seized from 100 Hano Street, Suites #8 and #14, Allston, Massachusetts, on or about January 7, 2016;

b.  approximately $5,268 U.S. Currency seized from Matthew Metz on or about January 7, 2016;

c.  approximately $537.74 seized from Wells Fargo Bank account number 1899471161 on or about January 8, 2016;

d.  approximately $569.03 seized from Citizen's Bank account number 1330853676;

e.  approximately $7,500 in United States currency seized on January 14, 2016, from a Priority Mail package addressed to Travis Castro and bearing a return address of EPS, 100 Hano Street, Allston, MA; and,

f.  $500,000 in United States currency, to be entered in the form of a forfeiture money judgment.

Defendant admits that these assets are subject to forfeiture on the grounds that they constitute, or are derived from, any proceeds obtained, directly or indirectly, as a result of the offenses; and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offenses; and/or they were involved in Defendant's offenses. Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine,

lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

Defendant acknowledges and agrees that the amount of the forfeiture money judgment represents proceeds of the crimes to which he is pleading guilty and that the proceeds have been transferred to, or deposited with, a third party, spent, cannot be located upon exercise of due diligence, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty. Accordingly, Defendant agrees that the United States is entitled to forfeit as "substitute assets" any other assets of Defendant up to the value of the now missing directly forfeitable assets.

Defendant agrees to assist fully in the forfeiture of the foregoing assets. Defendant agrees to promptly take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing within the jurisdiction of the United States any assets located outside of the United States, and taking all steps necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. Defendant further agrees (a) not to assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding, and (b) to testify truthfully in any such proceeding. In addition, if the U.S. Attorney requests, Defendant shall give the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest, at any time from January 1, 2012 to the present. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement. Defendant agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Plea Agreement, and will not assist any third party with regard to such challenge or review.

Defendant hereby also waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets. Without limiting the generality of the foregoing, Defendant hereby specifically waives and releases Defendant's claims to (a) approximately $52,970 U.S. Currency seized from 100 Hano Street, Suites #8 and #14, Allston, Massachusetts, on or about January 7, 2016; (b) approximately $5,268 U.S. Currency seized from Matthew Metz on or about January 7, 2016; (c) approximately $537.74 seized from Wells Fargo Bank account number 1899471161 on or about January 8, 2016; (d) approximately $569.03 seized from Citizen's Bank account number 1330853676; and (e) approximately $7,500 U.S. Currency seized on January 14, 2016, from a Priority Mail package addressed to Travis Castro and bearing a return address of EPS, 100 Hano Street, Allston, MA, as to which, Defendant hereby acknowledges, Defendant received actual notice of administrative or civil judicial forfeiture proceedings on February 5, 2016.

10.   Information For Presentence Report

Defendant agrees to provide all information requested by the U.S. Probation Office concerning Defendant's assets.

11.   Civil Liability

By entering into this Plea Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, Defendant may have incurred or may incur as a result of Defendant's conduct and plea of guilty to the charges specified in Paragraph 1 of this Plea Agreement.

12.   Rejection of Plea by Court

Should Defendant's guilty plea not be accepted by the Court for whatever reason, or later be withdrawn on Defendant's motion, this Plea Agreement shall be null and void at the option of the U.S. Attorney.

13.   Breach of Plea Agreement

If the U.S. Attorney determines that Defendant has failed to comply with any provision of this Plea Agreement, has violated any condition of Defendant's pretrial release, or has committed any crime following Defendant's execution of this Plea Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Plea Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing.  The U.S. Attorney may also pursue all remedies available to him under the law, regardless whether he elects to be released from his commitments under this Plea Agreement.  Further, the U.S. Attorney may pursue any and all charges that have been, or are to be, dismissed pursuant to this Plea Agreement.  Defendant recognizes that his breach of any obligation under this Plea Agreement shall not give rise to grounds for withdrawal of Defendant's guilty plea, but will give the U.S. Attorney the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements made by Defendant and any information, materials, documents or objects provided by Defendant to the government, without any limitation, regardless of any prior agreements or understandings, written or oral, to the contrary.  In this regard, Defendant hereby waives any defense to any charges that Defendant might otherwise have based upon any statute of limitations, the constitutional protection against pre-indictment delay, or the Speedy Trial Act.

14.   Who Is Bound By Plea Agreement

This Plea Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

15.  <u>Modifications to Plea Agreement</u>

This Plea Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below.  Please also sign below as Witness.  Return the original of this letter to Assistant U.S. Attorney Karen Beausey.

Very truly yours,

ANDREW E. LELLING
United States Attorney

By:

LINDA RICCI
Acting Chief, Narcotics and Money Laundering Unit
KATHERINE FERGUSON
Deputy Chief, Narcotics and Money Laundering Unit

KAREN D. BEAUSEY
Assistant U.S. Attorney

10

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter in its entirety and discussed it with my attorney.   I hereby acknowledge that (a) it accurately sets forth my plea agreement with the United States Attorney's Office for the District of Massachusetts; (b) there are no unwritten agreements between me and the United States Attorney's Office; and (c) no official of the United States has made any unwritten promises or representations to me, in connection with my change of plea.  In addition, I have received no prior offers to resolve this case.  I understand the crimes to which I have agreed to plead guilty, the mandatory minimum and maximum penalties for those offenses and the Sentencing Guideline penalties potentially applicable to them.  I am satisfied with the legal representation provided to me by my attorney.  We have had sufficient time to meet and discuss my case.  We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial.  I am entering into this Plea Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty, and I believe this Plea Agreement is in my best interest.

JESSE GILLIS
Defendant

Date: 3/8/18

I certify that Jesse Gillis has read this Plea Agreement and that we have discussed its meaning.  I believe he understands the Plea Agreement and is entering into the Plea Agreement freely, voluntarily, and knowingly.  I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

CHARLES MCGINTY, ESQ.
Assistant Federal Public Defender
Attorney for Defendant Gillis

Date:   3\8\18

11

## STATEMENT OF FACTS

### <u>JESSE GILLIS</u>

<u>U.S. v. Jesse Gillis et. al.</u>
Criminal No. 16-10320 GAO

In conjunction with Paragraph 1 of the letter of February 9, 2018, between my attorney, Charles McGinty, Esq., and the United States Attorney for the District of Massachusetts, setting forth the agreement between myself and the United States Attorney in the above-referenced matter, I agree that I am guilty of the offense to which I will plead guilty, and I represent that the following facts are true:

Between approximately January 2013 and my arrest, I was involved in a conspiracy to possess with intent to distribute and to distribute methamphetamine, and a conspiracy to launder money made from the sale of methamphetamine. I participated in those criminal activities knowingly and intentionally until the date of my arrest. I was initially brought into the conspiracy by James Giannetta, and initially participated by distributing methamphetamine to his customers in the Boston area. When I joined the conspiracy, Giannetta already had sources of supply for methamphetamine in California. During the time-frame charged in the Indictment, I first lived in Massachusetts but eventually moved to San Diego, California where I assumed primary responsibility for obtaining the methamphetamine from suppliers and having it transported to Boston for sale. James Giannetta, Jason Mackey, Matthew Metz, Bruce Reisman, and Jeffrey Carlo were some of the people who participated with me in one or more of these criminal activities and conspiracies, and although I never met them, I knew that Steven Beadles and Russell Ormiston participated in distribution activities with Metz. I now also understand that Metz was also receiving methamphetamine from Christopher Halfond, who I have not met.

In furtherance of the conspiracy, after I obtained methamphetamine from California I coordinated having it sent to Massachusetts via various means, including by shipping it through the US mail, FedEx, UPS, and other shipping methods to real and fake names at real addresses in Massachusetts. Packages containing drug proceeds were sometimes shipped back to California using the same methods.

In addition, in furtherance of the methamphetamine distribution and money laundering conspiracies, I created (with the assistance of others, including Jason Mackey) and utilized businesses such as Elite Protection Services LLC (which subsequently changed its name to MetroSheild Security LLC) and OCCAM Funding. MetroShield and Elite Protection Services rented office space at 100 Hano Street in Allston, Massachusetts, and we utilized that space to receive packages containing methamphetamine, to store and sell methamphetamine, to store money made from the sale of methamphetamine, and generally as a location out of which to run the illegal operation. We used the business accounts for these businesses to launder the proceeds made from the sale of the methamphetamine. Specifically, drug proceeds would be deposited into the businesses' accounts in Massachusetts by Metz, Carlo, and others. I was the only person authorized to take money out of MetroShield's accounts. Either I or somebody acting on my

12

behalf in California would withdraw the drug proceeds from the business accounts, which I then utilized either to pay my personal expenses or to pay for methamphetamine. The OCCAM Funding accounts were similarly used in the money laundering conspiracy to conceal and to transfer drug proceeds.

In addition to bank accounts, my co-conspirators also deposited large amounts of drug proceeds onto stored value cards (such as GreenDot cards) held in my name and in the names of other individuals. I would then either transfer those funds to accounts controlled by me, or I or someone acting on my behalf would withdraw the funds from the cards in California.

I further stipulate and agree that on February 11, 2014, Postal Inspectors seized $20,100 from a package mailed by me in Massachusetts to Giannetta at the Wyndham Bayside Hotel in San Diego, California, and that the money had been sent to Giannetta to be used to purchase methamphetamine as part of the conspiracy. I further stipulate and agree that on June 6, 2014, the San Diego Harbor Police Department seized a package which I had sent from MetroShield to San Diego, and which contained approximately 135 grams of methamphetamine (which I returned to San Diego because it was of poor quality) and approximately $18,000 in cash.

I further stipulate and agree that on March 25, 2015, agents seized a package which had been sent under my direction from San Diego to Giannetta's parents' house in Massachusetts, and which contained 219 grams of methamphetamine. I further stipulate and agree that on December 28, 2015, agents seized approximately 75 grams of methamphetamine which had been sold by Metz to two of his customers, Mario Castro and Jorge Grandon, on that date. I also stipulate and agree that on January 7, 2016, agents seized approximately 434 grams of methamphetamine (which had been shipped by Halfond from California) from Metz and Beadles in Massachusetts, and that on the same date agents seized approximately 4 grams of methamphetamine from Metz's backpack, approximately 26 grams of methamphetamine and $5,268 in drug proceeds from Metz's bedroom, and approximately 8 grams of methamphetamine and $52,970 in drug proceeds from MetroShield's office space. I further stipulate and agree that on September 19, 2016, agents seized approximately 87 grams of methamphetamine from Reisman, which had been sold to Reisman by Giannetta after having been shipped to Giannetta by me from California, that on September 20, 2016, agents seized approximately 142 grams of methamphetamine following a controlled purchase by Reisman from Giannetta (again, that methamphetamine had been shipped by me from California), that on September 27, 2017, agents seized approximately 1.66 grams of methamphetamine from Giannetta's residence, and that on November 1, 2016, agents seized approximately 47 grams of methamphetamine from Daniel Ponce, which had been sold to Ponce by Giannetta after having been shipped to Giannetta by me from California.

I stipulate and agree that agents seized a total of over 1180 grams of methamphetamine during the course of the conspiracy, and that this amount of methamphetamine was known to me, reasonably foreseeable to me, and is reasonably attributable to me as relevant conduct for sentencing purposes.

13

Finally, I admit that while in California I lived under a number of false identities, including John B. Volker and John L. Volker, which were two identities I stole and utilized in furtherance of the methamphetamine distribution and money laundering conspiracies. Specifically, I rented apartments, opened lines of credit, subscribed to cellular telephones, and conducted other transactions using these stolen identities in order to avoid creating a paper trail that would identify me as someone associated with either the drug trafficking or the money laundering activities. This enabled me to shield my identity from law enforcement and to continue participating in the conspiracies. I stipulate and agree that I opened the accounts listed on Attachment A hereto in the names identified thereon, in furtherance of the methamphetamine distribution and money laundering conspiracies as set forth above.


JESSE GILLIS
Defendant

Date: 3/8/18

14

# ATTACHMENT A - VOLKER ACCOUNTS

| Financial Institution | Account | Account Holder | Account Type | Begin Period | End Period |
|---|---|---|---|---|---|
| Ally Bank | ALLY-1046071070 | John L Volker | Checking | 02/09/16 | 10/05/16 |
| American Express | AMEX-3727-420266-65122 | John Volker | Credit Card | | |
| Bancorp | BAN-4259-5400-4009-0909 | John Volker | Prepaid | 08/09/16 | 10/31/16 |
| Bancorp | BAN-4259-5400-7002-5940 | John Volker | Prepaid | 07/30/16 | 10/31/16 |
| Bancorp | BAN-4259-5400-8021-2793 | Cameron Volker | Prepaid | 08/12/16 | 10/31/16 |
| Bancorp | BAN-5581-5881-7049-9503 | John Volker | Prepaid | 05/01/16 | 10/31/16 |
| Capital One | CAP-36014398011 | John Volker | 360 Checking | 02/18/16 | 10/31/16 |
| Capital One | CAP-36017937194 | J B Volker & Associates | Business savings | 06/02/16 | 10/31/16 |
| Capital One | CAP-36017937206 | J B Volker & Associates | Business checking | 06/02/16 | 10/31/16 |
| Capital One | CAP-36018775807 | John Volker | 360 Checking | 06/28/16 | 10/31/16 |
| Capital One | CAP-36018784546 | John Volker | 360 Savings | 06/28/16 | 10/31/16 |
| Capital One | CAP-4147-0979-9257-4402 | John L Volker | Credit Card | 02/18/16 | 03/28/16 |
| Capital One | CAP-4147-0987-2521-3490 | John L Volker | Credit Card | 05/09/16 | 08/04/16 |
| Discover | DISC-7006363276 | John L Volker | Checking | 06/03/16 | 09/16/16 |
| Kaiku | KAIKU-4259-5400-4009-0909 | John Volker | Prepaid Debit | | |
| Kaiku | KAIKU-4259-5400-8021-2793 | Cameron Volker | Prepaid Debit | | |
| NetSpend | NET-4039-9560-6488-1279 | Cameron Volker | Prepaid Debit | | |
| Paypal | PAY-2019184247950496683 | John Volker | Paypal | 02/18/16 | 11/01/16 |

15