UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 16-10320-GAO |
| ) | |
| JESSE GILLIS ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Jesse Gillis respectfully submits this memorandum in aid of sentencing.

I. **Proceedings to Date**

1. On November 9, 2016, Mr. Gillis was charged in two counts of a 10 count indictment with conspiracy to distribute methamphetamine, in violation of Title 21 U.S.C. §§ 846, and in count 10 with conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h).

2. On November 17, 2016, he was arrested and held until February 22, 2017. He was thereafter released and has remained in compliance with his pretrial conditions.

3. On March 8, 2018, he plead guilty to counts 1 and 10 of the indictment, pursuant to a plea agreement.

4. Probation and Pretrial Services records indicate that he has complied with all Court-ordered conditions of release.

Sentencing is scheduled for September 10, 2019.

II. **The Guideline Calculation**

The applicable guideline is as follows: The applicable guideline begins with a base level of 34, with 2 points added for a conviction under 18 U.S.C. § 1956 (USSG §2S1.1(b)(2)(B)), with 3 points added for role in the offense, and followed by a reduction of 3 points for acceptance of responsibility, so a Total Offense Level of 36. With a criminal history score of zero, the guideline is 188 months to 235 months.

III. **Personal History**

Mr. Gillis, now 34, was born in Cambridge MA. Within 5 days of his birth, he was adopted through Catholic Charities by the Gillis family. His early years were spent in North Weymouth MA, up to the 6th grade. While in third grade, although showing academic promise, it became evident to his teacher that he was having difficulty reading. He was diagnosed with dyslexia and placed in special programming until he graduated from high school.

In the fourth grade he joined the Boy Scouts, Weymouth's Boy Scout Troop 2, eventually becoming an Eagle Scout. To earn the honor, he built a public dock on the North River in Norwell for launching kayaks, canoes and small sailboats. He was a determined sailor, belonging to the Wessagusset Yacht Club where he raced Turnabouts (N-10s) and 420 sailboats from age 7 to 16. In the 9th and 10th grades, he volunteered to teach other kids to sail at the Lincoln Sailing Center in Hingham and was a volunteer sailing instructor at the Hingham Maritime Center for two summers. In the 9th grade, he became interested in rugby, later volunteering for three seasons as an assistant coach for lower classmen in the Hingham Middle School's Rugby Club. While on summer vacation from school, he also volunteered at the Hanover YMCA.

He was an engaged student, academically committed while deeply involved in the activities of the school. While in high school, he participated in wrestling where he made varsity and in his senior year was captain; played rugby; was part of the Math Team and the Robotics Club where he served as Treasurer; and participated in a national civics and debate society as a Junior Statesmen of America.

Outside of school, from the 8th grade through his senior year in High School, he spent most weekends participating in Revolutionary War reenactments up and down the East Coast with His

Majesty's First Regiment of Foot Guard, First Battalion, Center Company. This participation reflected his deep interest in the historical origins of the United States.

Overall, he was an excellent student, engaged in his schoolwork and his community, and generous with his time. He graduated from Norwell High School in 2003.

He began college at Babson College in Wellesley, earning a place on the Dean's List. He transferred to Boston University where he had a double major in Analytic Philosophy and Mathematical Logic. Each semester he was on the Dean's List. He graduated from BU in 2008 cum laude with a 3.5 cumulative GPA and a 3.9 in his concentration.

While in BU, he continued to return to Norwell High during winter breaks to volunteer as an assistant Wrestling coach. As an upperclassman, he also volunteered as a peer tutor at the BU Writing Center. At the time of his graduation, several of his professors were encouraging him to pursue a Ph.D. He felt certain that this would be his path, but first decided to take some time off to work at the family business, a plastics manufacturing company in West Roxbury. But he continued to be academically inclined, forming a philosophy club, an eclectic group of recently graduated philosophy and liberal arts students. A few times a month the participants would meet and discuss a wide array of issues. He was also active with a philanthropic group which supported development of South Shore Hospital.

His father, who was looking to retire, very much hoped that his son would take over the plastics business from him. However, his son wanted to return to the academic world with the intention of preparing for and applying to a Philosophy Ph.D. program the following year. However, in the Fall of 2011, he met James Giannetta and slowly and then more quickly became involved in the self-destructive course of criminal conduct, fueled by increasing drug use, which brings him before this Court.

He has great remorse for what he has done. The rigors of his academic training have made him a severe and unflinching critic of his own conduct.  He is unsparingly honest with himself about the harms done to others by his conduct.  His regrets are deeply felt and he hopes to make amends for the rest of his life.

IV.     **There is no Risk of Recidivism**

Mr. Gillis is in Criminal History Category I, with no criminal history.  A 2016 Sentencing Commission study found that first-time offenders pose the lowest risk of recidivism. U.S. S.C., "Recidivism Among Federal Offenders: A Comprehensive Overview," at 18 (2016) ("Recidivism"), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivismoverview.pdf . Offenders with zero criminal history points were rearrested 30.2% of the time within 8 years, compared to 81.5% of offenders with more than 10 criminal history points. Id. The 2016 study, however, did not isolate out all true first-offenders, since it treated all offenders with zero criminal history points the same, lumping together those with no arrests, those with minor convictions not scored, and those with timed out convictions. However, a 2004 Sentencing Commission study specifically considered the 24-month recidivism rate for offenders with no prior arrests of any kind. That study found that only 6.8% of offenders with no prior arrests were rearrested within 24 months. U.S.S.C., "Recidivism and the 'First Offender'", p. 14, available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf.  (May 2004). The reconviction rate for such offenders was only 2.5%. Id. See http://www.ussc.gov/guidelines/amendments/proposed-2017-amendments-federal-sentencing-guidelines.

In its proposed changes in 2017, albeit not enacted, the Commission proposed to differentiate among persons in Criminal History Category I to ensure reduced sentences for genuine "first offenders," that is "first time offenders with no prior convictions." As to those, such as defendant here, the Commission proposed a new guideline, at §4C1.1 (First Offenders), that would have provided lower guideline ranges, premised on data showing that "first offenders" generally pose the lowest risk of recidivism. See U.S. Sent. Comm'n, Proposed 2017 Amendments to the Federal Sentencing Guidelines (Dec. 19, 2016 and August 24, 2017), 82 FR 40651, and U.S. Sent. Comm'n, "Recidivism Among Federal Offenders: A Comprehensive Overview," at 18 (March 2016), available at http://www.ussc.gov/research/research-publications/recidivism-among-federal-offenders-comprehensive-overview. This data is reinforced by another Commission study, entitled "The Effects of Aging on Recidivism Among Federal Offenders" (Dec. 7, 2017), available at https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders.

The persuasive force of the data suggests that the need for specific deterrence is lessened, and with it the need for added severity in sentencing, where the defendant is, as here, a genuine first offender.

V.     **The Guidelines: National Trends**

Nationally, the rate of within-guideline sentences has consistently remained slightly below 50%, moving from 52% in FY2012, to 51% in FY2013, to 46% in FY2014, to 47.3% in FY2015, to 48.6% in FY2016 and to 49.1 in FY2017. See USSC, Comparison Of Sentence Imposed And Position Relative To The Guideline Range, Table 8, FY 2017.  In this District, the rate has been well below 50%, from 43% in FY2012, to 39% in 2013, to 23% in FY2014, to 25% in FY2015, to

27.5% in FY2016, and to 31% in FY2017. See Statistical Information Packet, Fiscal Year 2017, District of Massachusetts.

      VI.    **<u>The Appropriate Sentence</u>**

Mr. Gillis faces sentencing for serious criminal conduct. However, a sentence here should also reflect that his conduct was at variance with the character of his earlier years, which were marked by achievement, but more than that, by generosity to his fellow students and to the larger community. In many instances and over extended time periods, he volunteered for others with his time and energy. As well, his conduct since his arrest, fully in compliance with his release conditions, suggests further reason for leniency.

As noted long ago by Judge Irving Kaufmann, "in many cases a prison term not only withers the life of the prisoner but spreads like a stain in an ever-widening circle …," affecting a defendant's challenges in reintegrating back into work and society as well as affecting family members who must travel far to maintain connections with a loved one. See Irving Kaufmann, "Sentencing: The Judge's Problem," <u>The Atlantic</u>, January 1960. Here, the risk exists that Gillis' prospects will "wither," that his early promise will become buried beneath a sentence to mind-numbing lethargy. Habits and aspirations, stymied by a prison sentence, are hard to restore, and Gillis faces the challenge of a felony record to make the challenges all the more difficult.

    Respectfully submitted,

    JESSE GILLIS
    By his attorney,

    */s/ Charles P. McGinty*
    Charles P. McGinty
    B.B.O. #333480
    Federal Defender Office
    51 Sleeper Street, 5th Floor
    Boston, MA  02210
    Tel: 617-223-8061

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 9, 2019.

*/s/ Charles P. McGinty*
Charles P. McGinty